UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AKEEM DANIELS, CAMERON STINGILY, and NICHOLAS STONER, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>FANDUEL, INC. and DRAFTKINGS, INC.,<br><br>          Defendants. | Case No. 1:16-cv-1230<br><br>(formerly Marion County Superior Court 11 – Case No. 49D11 1605PL 015671) |

## NOTICE OF REMOVAL

Defendant FanDuel, Inc. ("FanDuel") hereby removes Case No. 49D11 1605PL 015671 from the Marion County Superior Court, to the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453.[1]  This Court has jurisdiction over this action based on diversity of citizenship under the Class Action Fairness Act of 2005 ("CAFA").  Pub. L. No. 109-2, 119 Stat. 4; 28 U.S.C. §§ 1332(d), 1453.  In support of its Notice of Removal, FanDuel states the following:

**I.     BACKGROUND**

1.     On May 4, 2016, plaintiffs Akeem Daniels, Cameron Stingily, and Nicholas Stoner commenced an action in Marion County Superior Court styled *Akeem Daniels, Cameron Stingily, Nicholas Stoner, and all others similarly situated v. FanDuel, Inc., DraftKings, Inc.*,

---

[1] Defendant DraftKings, Inc. consents to this Notice of Removal.

Cause No. 49D11-1605PL-015671.  (A true and correct copy of the complaint is attached as Exhibit 1, along with the state court docket sheet as Exhibit 2).

2. On May 9, 2016, plaintiffs' summons and complaint were served on FanDuel by mail.

3. FanDuel has not yet filed an answer or other pleading in response to the complaint.

4. Plaintiffs' complaint alleges that FanDuel and co-defendant DraftKings, Inc. ("DraftKings") used plaintiffs' names and likenesses in operating and promoting their online fantasy sports contests without plaintiffs' consent, and that doing so was a violation of their right of publicity under Indiana law, Ind. Code § 32-36-1-1, *et seq.*, *see* Ex. 1 (Complaint) ¶¶ 129-139.

5. Plaintiffs style their complaint as a putative class action and allege that their claims are typical of the class members they seek to represent.  The complaint seeks certification of the following class:

> All NCAA football and basketball players on a college roster since May 4, 2014 whose names and/or likenesses Defendant[s] displayed to any Indiana consumer i) to promote or ii) to operate its fantasy sports gaming contests from May 4, 2014 through the present.

Ex. 1 (Complaint) ¶ 113.  The proposed class definition excludes (i) "[d]efendant[s] and [their] parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which [d]efendant[s] ha[ve] a controlling interest," (ii) "all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out," (iii) "any and all federal, state, or local governments," and (iv) "all judges assigned to hear any aspect of this litigation, as well as their immediate family members." *Id.* ¶ 114.

## II. ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED.

6. Plaintiffs served FanDuel on May 9, 2016. Accordingly, removal of this action is timely under 28 U.S.C. § 1446(b).

7. The Southern District of Indiana is the judicial district embracing the place where the state court case was brought and is pending, *see* 28 U.S.C. § 94(b), and is thus the proper district court to which this case should be removed, *see* 28 U.S.C. § 1446(a).

8. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all the process, pleadings, orders, and documents from the state court action that have been served upon FanDuel are being filed with this Notice of Removal.

9. As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being submitted to the Clerk of the Marion County Superior Court of the State of Indiana, and is being served on counsel of record for plaintiffs.

## III. THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

10. Under CAFA, this Court has jurisdiction over class actions in which (i) the putative class contains at least 100 members; (ii) any member of the putative class is a citizen of a state different from any defendant; and (iii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2) & (d)(5). If these requirements are met, CAFA authorizes removal pursuant to 28 U.S.C. § 1446.

11. As demonstrated below, this Court has subject matter jurisdiction over this action, and removal is proper, because the requirements of CAFA are satisfied.

### A. The Class Size Exceeds 100 Members.

12. The complaint alleges that the proposed class includes roughly 3,000 members and that the class is so numerous that joinder of all members is impracticable. Ex. 1 (Complaint) ¶ 121; *see also id*. ¶ 1 (alleging violations as to "as many as 3,000 other college football and basketball players . . . ."). Plaintiffs' allegations as to the size of the putative class are sufficient to presumptively satisfy the numerosity requirement of CAFA for purposes of removal. *Cf. Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 762-63 (7th Cir. 2011) (declining to address CAFA jurisdictional requirements that the "parties agree . . . are satisfied"); *ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 476 (7th Cir. 2011) (same).

### B. There is Diversity of Citizenship.

13. Under CAFA, the diversity requirement for subject matter jurisdiction over class actions is satisfied if "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2) (emphasis added).

14. This minimal diversity requirement of CAFA is satisfied here. FanDuel is a citizen of Delaware, where it is incorporated, *see* Ex. 3 (M. Gaber Declaration) ¶ 2, and New York, where it has its principal place of business, *see id.* ¶ 3; Ex. 1 (Complaint) ¶ 7; *see also* 28 U.S.C. § 1332(c) (providing that corporation is citizen of states of incorporation and principal place of business).

15. Plaintiffs do not limit their class definition to solely those college football and basketball players who are citizens of New York or Delaware; rather, the proposed class definition includes *all* college football and basketball players, nationwide.

16. As one specific example of the minimal diversity between one plaintiff and one defendant, plaintiff Nicholas Stoner is a citizen of Indiana. Citizenship for diversity jurisdiction

4

purposes "is understood to mean physical presence and the intent to remain somewhere indefinitely." *Castellon-Contreras v. INS*, 45 F.3d 149, 153 (7th Cir. 1995); *see also Texas v. Florida*, 306 U.S. 398, 424 (1939) ("Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile."). Mr. Stoner's residence-in-fact is Greenwood, Indiana, *see* Ex. 1 (Complaint) ¶ 4.

17. "Intent to establish a domicile has been described as 'a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct.'" *Newsom v. Caliber Auto Transfer of St. Louis, Inc.*, No. 09-954-GPM, 2010 WL 415388, at *2 (S.D. Ill. Feb. 1, 2010) (quoting *Sadat v. Mertes*, 615 F.2d 1176, 1181 (7th Cir. 1980)). Among those factors are place of employment and social involvement in the community. *Newsom*, 2010 WL 415388, at *2. Mr. Stoner's public LinkedIn profile demonstrates his Indiana citizenship. For the past eight months, he has been employed as an intern at Skyline Property Group in Greenwood, Indiana, where he resides. Ex. 3 (Gaber Decl.) ¶ 4. For the preceding five months, from June 2015 to October 2015, Mr. Stoner was a Student Ministry Intern at Stones Crossing Church in Greenwood, Indiana. *Id.* He attended Indiana University in Bloomington, Indiana, *id.*; Ex. 1 (Complaint) ¶ 4, and his profile on Indiana University's website notes that his hometown is Greenwood, Indiana, Ex. 3 (Gaber Decl.) ¶ 5. Mr. Stoner thus grew up in Indiana, attended college in Indiana, and returned to his hometown in Indiana after college, where he resides, works, and is involved with his church community. He is thus a citizen of Indiana, and is one example of the necessary minimal diversity established in this case.

### C. The Amount in Controversy Exceeds $5,000,000.

18. Under CAFA, the "amount in controversy" includes compensatory damages, punitive damages, statutory damages, and attorneys' fees, among other forms of relief. *See, e.g.*,

*Stull v. YTB Int'l, Inc.*, No. 10-600-GPM, 2010 WL 4008153, at *3 (S.D. Ill. Oct. 13, 2010); *see also ABM*, 646 F.3d at 479; *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 317-18 (7th Cir. 1996); *Sharp Elecs. Corp. v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir. 1991). In *Keeling v. Esurance Insurance Co.*, 660 F.3d 273 (7th Cir. 2011), the Seventh Circuit held that a defendant met CAFA's amount-in-controversy requirement where it relied upon the possibility of plaintiff receiving $3 million in punitive damages—an amount five times the alleged actual loss. *Id.* at 275. The Court may look beyond the complaint to determine whether the amount in controversy requirement is met. *See, e.g.*, *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427-28 (7th Cir. 1997).

19.     "A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). A defendant does not "have to confess liability in order to show that the controversy exceeds the threshold." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). "The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (quotation marks omitted).

20.     Although plaintiffs do not allege a specific damages amount, the face of their complaint demonstrates that the amount in controversy exceeds $5,000,000. Plaintiffs allege that there are "roughly 3,000 members" of the class, Ex. 1 (Complaint) ¶ 121, and seek the *greater* of (1) disgorgement of profits derived by defendants for the "unauthorized use of Plaintiffs and Class Members' names within the State of Indiana," or (2) "[f]or each Class Member, recovery of the maximum statutory damages provided for under Ind. Code § 32-36-1-10(1)(A)," *id.* at 35

(Prayer for Relief). Indiana's right-of-publicity statute allows a plaintiff to recover the greater of $1,000 or actual damages, including "profits derived from the unauthorized use." Ind. Code. § 32-36-1-10(1). Plaintiffs thus allege that each class member is entitled to *at least* $1,000, which, multiplied by 3,000 class members, yields $3,000,000 in statutory damages. But plaintiffs also allege that "Defendants' conduct has been knowing, willful, and intentional," Ex. 1 (Complaint) ¶ 136, and on that basis demand treble or punitive damages, *id.* at 35, which the Indiana statute permits, Ind. Code. § 32-36-1-10(1)(2). Trebling $3,000,000 in actual damages yields $9,000,000—well above the $5,000,000 threshold for CAFA jurisdiction. In addition, Plaintiffs have likely incurred attorneys' fees in investigating and filing their complaint in this action. *See* Ind. Code § 32-36-1-12 (authorizing fee award for right-of-publicity claims); *ABM*, 646 F.3d at 479.

21. Moreover, plaintiffs seek the greater of statutory or actual damages, and so $9,000,000 may actually understate plaintiffs' demand. For example, plaintiffs allege that "FanDuel generated over $56 million in revenue to its own company account in 2014," Ex. 1 (Complaint) ¶ 111, and that its 2015 revenues "are believed to have dramatically exceeded $56 million, given that it projected that it will hand out nearly $2 billion in cash prizes this year (nearly four times the cash prize payout than in 2014)," *id.* ¶ 112. Plaintiffs seek disgorgement of FanDuel's profits. *Id.* at 35 (Prayer for Relief). It is not necessary to engage in a calculation of this amount, however, because plaintiffs seek at least $9,000,000 in trebled statutory damages, satisfying CAFA's amount-in-controversy requirement.

22. Additionally, plaintiffs Daniels and Stingily originally filed substantially the same case against both FanDuel and DraftKings in the United States District Court for the Northern District of Illinois, No. 16-cv-1220, and relied on federal court jurisdiction under CAFA to do so,

alleging there that the amount in controversy exceeded $5,000,000. *See, e.g.*, Amended Complaint ¶ 8, *Daniels v. FanDuel*, No. 16-cv-1220 (N.D. Ill. Apr. 25, 2016), ECF No. 17 (attached hereto as Ex. 4); *see Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) ("[A] court is of course entitled to take judicial notice of judicial proceedings."). Accordingly, the amount in controversy here clearly exceeds the $5,000,000 threshold of CAFA.

**IV.    NO WAIVER.**

23.    Neither the filing of this Notice of Removal nor any calculations or assumptions made herein shall operate as a waiver of any defenses otherwise available to FanDuel or constitute any admission by it to any of plaintiffs' complaint allegations, including the class action allegations, and FanDuel expressly reserves all defenses, motions, and/or pleas.

WHEREFORE, based on the foregoing, FanDuel respectfully removes this case to the United States District Court for the Southern District of Indiana.

Respectfully submitted,

s/*Craig E. Pinkus*
Craig E. Pinkus (#5749-49)
Philip R. Zimmerly (#30217-06)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
(317) 684-5000; Fax (317) 684-5173
CPinkus@boselaw.com
PZimmerly@boselaw.com

Kenneth L. Doroshow (*pro hac vice to be filed*)
Mark P. Gaber (*pro hac vice to be filed*)
JENNER & BLOCK LLC
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
(202) 639-6027; Fax (202) 661-4855
kdoroshow@jenner.com
mgaber@jenner.com

*Attorneys for Defendant, FanDuel, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2016, a copy of the foregoing "Notice of Removal" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

>Stephen B. Caplin, Esq.
>Stephen B. Caplin Professional Corporation
>9245 North Meridian Street, Suite 301
>Indianapolis, IN  46260

>s/*Craig E. Pinkus*
>Craig E. Pinkus

3003592/27228.0001